(No. 3888— <span></span>

VERA JUNE WINFIELD, WIDOW OF EARL WINFIELD, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 12, 1945.*

JOHN A. MEAD AND SAMUEL J. NAYLOR, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This complaint was filed on November 14, 1944. It seeks an award for the death of claimant's husband which occurred on the 26th day of September, 1944.

The record consists of the complaint, departmental report of the Divsion of Highways, stipulation waiving brief, statement and argument on behalf of claimant and respondent.

The record discloses that the deceased, Earl Winfield, was first given employment by the respondent on the 25th day of March, 1941, in the Division of Highways of the Department of Public Works and Buildings. He continued in such employment until the date of his death. The record further discloses that the deceased at the time of the accident on August 9, 1944, was operating a power mower for respondent along the upper edge of an embankment about five miles northwest of the village of Bowen. The level space between the edge of the em-

bankment and the fence at the right-of-way line narrowed as the embankment became higher and while driving said mower along the above described terrain, the bank crumbled from under the right rear wheel of the mower, causing it to tip over. The deceased jumped down the bank to avoid the possibility of the mower turning over on him. The bank being steep, the deceased landed with considerable momentum which caused him to run down the bank onto the concrete pavement before he was able to come to a stop. The mower followed down the bank, overturned, stopping upside down on the pavement with the motor running. The deceased ran over and shut off the motor. In jumping and falling to the pavement, the deceased sustained bruises and thereafter became stiff and sore, but he continued to work until quitting time at 5:00 P. M., then he went home. The claimant voided immediately after he returned home and noticed blood in his urine. During the evening he continued to have distress and frequently voided bloody urine. His discomfort increased, and the claimant called Dr. Earl Cooper, of Augusta, about 3:00 the next morning. The doctor found the claimant's intestate in intense pain, unable to void, and his bladder distended. Catheterization was done and the bladder was found to be filled with blood clots and bloody urine. On August 16, 1944, Dr. Cooper recommended hospitalization and that Dr. Arthur Sprenger, a urologist, be called in attendance. Mr. Winfield was moved by ambulance to St. Francis Hospital that same day and was placed under the care of Dr. Sprenger, who attended him until his death.

On September 5, Dr. Cooper sent the following report to the Division of Highways:

"Patient's story of accident: Mowing on hillside. Mower slipped, throwing it off balance and causing loss of control; mower rolled onto middle line pavement. He was thrown, landing on pavement below. Nature of injury: Traumatism—result of impact of landing resulting in diffused severe hemorrhage. Frequent urination. Constant pain, formation of tumor undetermined previously not present. Tests revealed blood in urine. Treatment: Rest in bed. Transferred to Dr. Sprenger, urologist in Peoria, Illinois. Hospitalized."

Dr. Sprenger also filed a report on the same day which is as follows:

"Patient's story of accident: Mowing on hillside. Mower slipped, throwing it off balance and causing loss of control; mower rolled onto middle line pavement. He was thrown, landing on pavement below. Nature of injury: Distended bladder, blood clots, and a marked secondary anemia. No visible signs of injury. The bleeding may have been accentuated by the injury. Treatment: Suprapubic cystotomy, removal of tumor tissue. Blood transfusions as needed. Later resection of remainder of bladder tumor. Estimated date of discharge: Unable to say."

Because of the history of the injury, the death was reported to the coroner, who ordered an autopsy which was performed by Dr. J. M. Martin, Peoria, at 10:15 A. M. the same morning. Dr. Martin's finding was as follows:

"Anatomical Diagnosis"

1. Status post suprapubic cystotomy
2. Large perivesical and retroperitoneal abscess on the left side.
3. Large partially necrotic papilloma of the bladder.
4. Fetid purulent ascending cystopyelonephritis.
5. Subacute splenitis.
6. Central fatty infiltration of the liver.
7. Depletion of lipoid in the adrenal cortex.
8. Anemia of the myorcardium.
9. Recurrent verrucous endocarditis of the aortic and mitral valves.
10. Mucous gastritis.
11. Emaciation."

On September 27, Dr. Sprenger filed the following report with the Division of Highways:

"Treatment: Patient received blood transfusion on admittance. Cystoscopy performed. Two days later, suprapubic cystotomy followed by repeated blood transfusions. Remainder of tumor mass removed by trans-urethral resection. Remarks: This patient was practically moribund on admittance. In spite of all treatment patient gradually became worse and died September 26, 1944."

The record discloses that the Division of Highways has paid the following accounts: Dr. Earl Cooper $35.00; Dr. Arthur Sprenger $560.00; Dr. George Parker $19.00; St. Francis Hospital $526.85; Stillwell Funeral Home $20.00; Total $1,160.85.

From a consideration of the record we find as follows:

That on the 9th day of August, 1944, the said Earl Winfield and respondent were operating under the provisions of the Workmen's Compensation Act of the State of Illinois. That on said date, said Earl Winfield sustained accidental injury which arose out of and in the course of his employment from which he died on September 26, 1944. That notice of the accident was given to the said respondent and claim for compensation was made by the above named claimant, within the time required by the provisions of such Act.

That the earnings of said employee during the year preceding the accident were $1,416.15 and his average weekly wage was $27.23. That at the time of the accident he was 32 years of age, married to claimant, and had no children dependent upon him under the age of 16 years.

We find that claimant's intestate was totally disabled as a result of said accident from August 10 to September 26 inclusive, and that he was paid by the respondent $109.71 temporary compensation for that period which must be deducted from the award. All medical and hospitalization expenses incurred were paid by the respondent.

An award is therefore entered in favor of claimant, Vera June Winfield, in the sum of $4,700.00, as provided in Section 7 (a) and (1) of the Act, from which must be deducted the sum of $109.71, leaving a balance of $4,590.29, to be paid to her by the respondent at $16.00 per week. The sum of $592.00 in a lump sum, representing 37 weeks compensation which has accrued from September 27, 1944, to June 13, 1945. The remainder of said award amounting to the sum of $3,998.29, to be paid to claimant at the rate of $16.00 per week for 249 weeks with one final weekly payment of $14.29. All future payments being subject to the terms and provisions of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is specifically reserved for the entry for such further orders as may from time to time be necessary.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."